ORAL ARGUMENT HELD DECEMBER 14, 2022

No. 22-5022
(consolidated with No. 21-5265)

———————————————

UNITED STATES COURT OF APPEALS
FOR THE D.C. CIRCUIT

———————————————

WEST FLAGLER ASSOCIATES, LTD., et al.,
*Plaintiffs-Appellees*,

v.

DEBRA HAALAND, et al.,
*Defendants-Appellants*.

———————————————

Appeal from the United States District Court
for the District of Columbia
No. 1:21-cv-02192 (Hon. Dabney L. Friedrich)

———————————————

**RESPONSE OF FEDERAL APPELLANTS
IN OPPOSITION TO REHEARING EN BANC**

———————————————

TODD KIM
*Assistant Attorney General*
REBECCA M. ROSS
HILLARY HOFFMAN
RACHEL HERON
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 514-0916
rachel.heron@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... ii

GLOSSARY ................................................................................................ v

INTRODUCTION ....................................................................................... 1

STATEMENT .............................................................................................. 2

REASONS FOR DENYING THE PETITION ............................................ 7

CONCLUSION ......................................................................................... 17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Am. Fed'n of Gov't Emps., AFL-CIO v. United States*,
    330 F.3d 513 (D.C. Cir. 2003)........................................................17

*Air Line Pilots Ass'n Intern. v. Eastern Air Lines, Inc.*,
    863 F.2d 891 (D.C. Cir. 1988).......................................................9

*Bartlett v. Bowen*,
    824 F.2d 1240 (D.C. Cir. 1987)..................................................8, 9

*Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v.*
    *California*,
    618 F.3d 1066 (9th Cir. 2010) .....................................................9

*California v. Cabazon Band of Mission Indians*,
    480 U.S. 202 (1987)........................................................................2

*Chicken Ranch Rancheria of Me-Wuk Indians v. California*,
    42 F.4th 1024 (9th Cir. 2022) ....................................................12

*Flandreau Santee Sioux Tribe v. Noem*,
    938 F.3d 928 (8th Cir. 2019) ......................................................13

*\*Michigan v. Bay Mills Indian Cmty.*,
    572 U.S. 782 (2014)...............................................................2, 3, 13

*Morton v. Mancari*,
    417 U.S. 535 (1974)......................................................................16

*Navajo Nation v. Dalley*,
    896 F.3d 1196 (10th Cir. 2018) ..................................................13

*\*Papago Tribal Util. Auth. v. FERC*,
    723 F.2d 950 (D.C. Cir. 1983).................................................6, 10

*State of California v. Iipay Nation of Santa Ysabel*,
    898 F.3d 960 (9th Cir. 2018) ......................................................10

*Williams v. Babbitt*,
  115 F.3d 657 (9th Cir. 1997) ...........................................................16

## State Constitution

Fla. Const. art. X, § 30 .....................................................................14

## Statutes and Court Rules

Indian Gaming Regulatory Act
  25 U.S.C. § 2701-02 .......................................................................16

  25 U.S.C. § 2701(1) ..........................................................................2

  25 U.S.C. § 2702(1) ..........................................................................2

  25 U.S.C. § 2703(8) ..........................................................................2

  25 U.S.C. § 2710(d)(1) ...................................................................2, 3

  25 U.S.C. § 2710(d)(1)(C) .............................................................2, 12

  *25 U.S.C. § 2710(d)(3) ....................................................................3

  25 U.S.C. § 2710(d)(3)(A) ................................................................3

  25 U.S.C. § 2710(d)(3)(B) ................................................................3

  25 U.S.C. § 2710(d)(3)(C) .......................................................3, 12, 14

  25 U.S.C. § 2710(d)(3)(C)(i)-(ii) .....................................................11

  25 U.S.C. § 2710(d)(3)(C)(i) ............................................................3

  25 U.S.C. § 2710(d)(3)(C)(ii) ...........................................................3

  25 U.S.C. § 2710(d)(3)(C)(vii) .........................................................3

  25 U.S.C. § 2710(d)(4) ...................................................................14

25 U.S.C. § 2710(d)(5) ...............................................................................14

25 U.S.C. § 2710(d)(8)(A) ...........................................................................3

25 U.S.C. § 2710(d)(8)(B) ...........................................................................3

25 U.S.C. § 2710(d)(8)(C) .......................................................................4, 5

*Fed. R. App. P. 35(a) ..................................................................................8

## GLOSSARY

IGRA   Indian Gaming Regulatory Act

## INTRODUCTION

Plaintiffs (collectively, "West Flagler") are Florida-based brick-and-mortar casinos who believe that the State of Florida violated its constitution and engaged in unlawful discrimination by enacting a statute permitting persons located on non-Indian lands within Florida to place online wagers through a sportsbook operated by the Seminole Tribe of Florida. West Flagler responded by suing the Secretary of the Interior—who has no control over what gaming Florida permits on non-Indian land within its borders—because the Secretary did not disapprove a Tribal-State gaming compact addressing, among other topics, how the Tribe will treat state-sanctioned wagers placed from non-Indian land once received by the Tribe via servers located on Indian land.

West Flagler's arguments for rehearing are strawmen, premised on its erroneous assertion that, by referencing the state-sanctioned wagers, the Compact—and the Secretary's approval thereof—purport to unilaterally legalize the placement of those wagers and the State regime for regulating them. But, as West Flagler acknowledges, the panel held in no uncertain terms that the Compact does *not* do that. And the panel did so while making scrupulously clear that neither its opinion nor the Secretary's approval prevents West Flagler from challenging the relevant State law in Florida's courts. Rehearing is unwarranted.

## STATEMENT

1.      a.      "Indian tribes are domestic dependent nations that exercise inherent sovereign authority." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014) (internal quotation marks omitted). Unless curtailed by Congress, that inherent authority includes the power to decide whether and to what extent gaming is permitted on tribal lands. *See California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 207, 221-22 (1987).

b.      In enacting the Indian Gaming Regulatory Act ("IGRA"), Congress recognized the importance of tribally owned or licensed gaming facilities as a way for tribes to raise revenue to provide critical government services to their members. 25 U.S.C. §§ 2701(1), 2702(1). But Congress chose to place certain conditions on tribes' authority to permit casino-style gaming such as sports betting—known under the statute as "class III gaming," *id.* § 2703(8)—on Indian land within a state's borders. *See generally id.* § 2710(d)(1). Specifically, IGRA provides that, subject to an exception not relevant here, class III gaming "shall be lawful on Indian lands only if" it is "conducted in conformance with" a valid compact entered into by a tribe and state. *Id.* § 2710(d)(1)(C).

c.      By contrast, IGRA places no conditions or restrictions on gaming on *non*-Indian lands. *See Bay Mills*, 572 U.S. at 794-95. The statute thus leaves undisturbed a state's "capacious" authority to determine whether and under

2

what conditions to permit gaming on lands within its jurisdiction. *Id.* at 794-96.
Nothing in IGRA compels a state to seek the Secretary's approval before
permitting gaming on non-Indian land, or before enacting a regulatory regime
governing such gaming. *See* 25 U.S.C. §§ 2710(d)(1), (d)(3)(A).

      d.    IGRA leaves the substance of compacts authorizing Indian-land
gaming largely to its signatories' discretion. *See id.* § 2710(d)(3). Tribes and states
"may" include in compacts their agreements on a list of topics other than Indian-
land gaming itself. *Id.* § 2710(d)(3)(C). These topics include "the application of the
criminal and civil laws and regulations of the Indian tribe or the State that are
directly related to" gaming, *id.* § 2710(d)(3)(C)(i); "the allocation of criminal and
civil jurisdiction" to regulate gaming between the state and tribe, *id.*
§ 2710(d)(3)(C)(ii); and—notably—"any other subjects that are directly related to
the operation of gaming activities," *id.* § 2710(d)(3)(C)(vii).

      e.    IGRA requires that a compact be submitted to the Secretary
before it may go into effect. *Id.* § 2710(d)(3)(B). The Secretary's options for acting
on a submitted compact are circumscribed. She may approve the compact. *Id.*
§ 2710(d)(8)(A). Alternately, she "may disapprove a compact," but only when one
of three conditions is present: the compact violates IGRA, "any other provision of
Federal law," or "the trust obligations of the United States to Indians." *Id.*
§ 2710(d)(8)(B). The Secretary's only other option is to take no action, in which

3

case the compact becomes effective as a matter of law after 45 days "but only to the extent the compact is consistent with" IGRA. *Id.* § 2710(d)(8)(C).

2.    a.    At issue in this appeal is a 2021 Compact between Florida and the Seminole Tribe. As relevant here, that Compact provides that the Tribe may offer "Sports Betting," defined as "wagering on any past or future professional sport or athletic event" or other competition or contest. JA 686. Specifically, the Compact allows the Tribe to maintain one or more online portals, or sportsbooks, which users may access to place wagers via the internet or mobile networks. JA 676, 686-93. The online sportsbooks must be hosted on servers located at one or more of the Tribe's existing casinos on Indian land. JA 687.

b.    The Compact contemplates that Florida will permit persons located on non-Indian lands in the State to place wagers through the Tribe's online sportsbook, in addition to customers physically present at the Tribe's casinos. JA 676, 686-87, 692. Under the Compact, the State and Tribe "deem[]" such wagers to occur on Indian land, such that those wagers will be regulated primarily by the Tribe, subject to requirements listed in the Compact. JA 687, 692, 694-97, 702-03, 707-10. The Florida legislature amended existing State law to permit the placement of the contemplated wagers by persons outside Indian land. JA 757. The State statute, like the Compact, provides that such wagers "shall be deemed to be

4

exclusively conducted by the Tribe where the servers or other devices used to conduct such wagering activity on the Tribe's Indian lands are located." *Id.*

        c.    The State and Tribe submitted the Compact to the Secretary for approval on June 21, 2021. JA 668. The Secretary did not act within 45 days, so the Compact was "considered to have been approved," to the extent consistent with IGRA. 25 U.S.C. § 2710(d)(8)(C); *see* JA 214.

    3.    a.    West Flagler subsequently sued the Secretary under the Administrative Procedure Act, claiming that the Secretary had a duty to disapprove the Compact. JA 50. According to West Flagler, the Compact violates IGRA by purporting to authorize gaming—specifically, placing online wagers—outside Indian land, notwithstanding that such wagers are separately authorized by Florida statute. JA 50-53. West Flagler also claimed that approving the Compact violated other federal laws, including the equal-protection component of the Fifth Amendment. *Id.*

        b.    The district court granted judgment for West Flagler on narrow grounds, concluding that the Compact violated IGRA by "attempt[ing] to authorize sports betting both on and off Indian lands." JA 572-77. The court reached that conclusion despite the existence of a plausible contrary reading of the Compact— namely, that it memorializes how the State and Tribe will treat wagers made outside Indian land, on the understanding that those wagers must be separately and

validly authorized by State statute to be legal. *See* JA 575-77. The court did not

reach West Flagler's alternate argument regarding non-IGRA federal law. JA 577-

79.

    c.  On appeal, West Flagler parroted the district court's

interpretation of the Compact. But it also offered a broad alternative argument that

a compact violates IGRA by even discussing gaming outside Indian land,

regardless of whether it purports to authorize that gaming.

  The panel correctly rejected both arguments. It recognized that the Compact

is "capable of an interpretation in harmony with" IGRA, and therefore applied the

settled precept that "a contractual provision should, if possible, be interpreted in

such a fashion as to render it lawful rather than unlawful" to find that, while the

Compact contemplates non-Indian land gaming will occur, it does not authorize

such gaming. Slip Op. 11-13 (quoting *Papago Tribal Util. Auth. v. FERC*, 723

F.2d 950, 954 (D.C. Cir. 1983)). The panel was explicit that such gaming must be

authorized, if at all, by State law. *Id.* 16. The panel "express[ed] no opinion as to

whether the Florida statute ratifying the Compact" satisfies the State constitution,

recognizing that "[t]hat question and any other related questions of state law are

outside the scope of the Secretary's review of the Compact, are outside the scope

of our judicial review, and as a prudential matter are best left for Florida's courts to

decide." *Id.* 17.

As to West Flagler's assertion that a Compact may not even discuss gaming outside Indian land, the panel explained that, to the contrary, IGRA permits compacts to discuss activities "directly related to the operation of" Indian-land gaming. Op. 13. West Flagler failed to present any persuasive reason why that language should be read to exclude "gaming activity outside of Indian lands that is directly related to the gaming activity authorized by a compact." *Id.* 13-16.

The panel therefore reversed. In so doing, it also rejected West Flagler's argument that the Secretary violated the Fifth Amendment. *Id.* 20-21. That equal-protection argument rested on the same mistaken premise that the Secretary's approval of the Compact provided federal imprimatur for the State regime regulating wagering outside Indian lands, and it lacked merit in any event. *Id.*

## REASONS FOR DENYING THE PETITION

The panel correctly held that the Secretary had no duty to disapprove the Compact for the straightforward and fact-specific reason that the Compact can—and therefore must—be read in a way that is consistent with IGRA. That narrow and reasonable reading—which has been endorsed by both parties to the Compact and by the Secretary, *see* ECF No. 1960619 at 2 (amicus brief of Florida); ECF No. 1960550 at 7-8 (amicus brief of Tribe); ECF No. 1959740 at 24-30—belies any suggestion that the Compact blesses the off-Indian land wagering that West Flagler believes violates the Florida constitution, and leaves fully intact West

Flagler's ability to challenge the Florida statute authorizing those wagers. Both questions of "exceptional importance" that West Flagler alleges exist here are premised on a contrary reading of the Compact's text that the panel expressly rejected and that conflicts with basic principles of contract interpretation. Rehearing *en banc* is not warranted.

1.    a.    The burden to demonstrate that this Court should rehear an appeal *en banc* is a heavy one, granted "only in the rarest of circumstances." *Bartlett v. Bowen*, 824 F.2d 1240, 1244 (D.C. Cir. 1987) (Edwards, J., concurring in denials of rehearing *en banc*); *see* Fed. R. App. P. 35(a). This case does not present that rare circumstance. West Flagler's petition asserts that the case presents questions of exceptional importance because the panel opinion allegedly gives the Secretary power to authorize a State regime for gaming outside Indian land that West Flagler believes violates the Florida constitution and equal-protection principles. Pet. 1, 2-3; *see id.* 7-8, 12-16. But that is not what the panel said or meant. To the contrary, the panel was explicit that it read the Compact—and, as a matter of law, *had* to read the Compact—to delineate what activities the Tribe may take on Indian land and what responsibilities the Tribe has for regulating activities occurring outside Indian land, understanding that the ultimate validity of the latter activities is a question of State law to be decided by State courts. Op. 11-13, 16-17. Despite repeated insinuations to the contrary, West Flagler's petition concedes that

this is the actual, limited holding that the panel reached. Pet. 2-3, 6-7. That admission alone defeats the request for rehearing. *Cf. Air Line Pilots Ass'n Intern. v. Eastern Air Lines, Inc.*, 863 F.2d 891, 929 (D.C. Cir. 1988) (Williams, J., concurring in denial of rehearing *en banc*) (declaring it "inappropriate" to hold *en banc* hearing "to consider a theory not contradicted by the panel and not advanced by any party").

b.    West Flagler nevertheless asserts that the panel was wrong to interpret the Compact in this limited way. But West Flagler offers no argument why a disagreement over the proper interpretation of a single provision of a single compact merits the attention of the *en banc* court. *Cf. Bartlett*, 824 F.2d at 1244 (denying rehearing *en banc* where "case does not present questions of real significance to the legal process as well as to the litigants" (internal quotation marks omitted)).

c.    In any event, West Flagler's criticism of the panel's interpretation is unfounded. IGRA compacts are interpreted according to "[g]eneral principles of federal contract law." *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*, 618 F.3d 1066, 1073 (9th Cir. 2010). Among those principles is the black-letter proposition that "a contractual provision should, if possible, be interpreted in such a fashion as to render it lawful rather than

9

unlawful." *Papago*, 723 F.2d at 954; *see generally* Op. 11-12 (collecting

authority).

Here, the panel parsed the relevant Compact text and found that it was

susceptible to the permissible reading advanced by the Secretary—*i.e.*, that it

authorizes the Tribe to receive and process wagers through its online sportsbook on

Indian land, while leaving to State law the legality of placing a wager from outside

Indian land. Op. 11-13, 16-17. As the panel explained, the relevant Compact text

declares that "the Tribe is authorized to operate Covered Games on its Indian

lands, as defined in [IGRA]." *Id.* 12 (quoting JA 692). The panel reasonably read

that sentence to authorize those actions taken by the Tribe itself (*i.e.,* receipt and

processing of the wagers), all of which occur on Indian land. *See id.*[1]

By contrast, the Compact's next sentence specifically discusses the

placement of wagers "made by players physically located within the State using a

mobile or other electronic device." *Id.* (quoting JA 692). Such wagers "shall be

deemed to take place" on Indian land, but the text does not specify what source of

law authorizes them. *Id.* Indeed, unlike the sentence regarding the Tribe's

activities, the ensuing sentence does not even declare that those wagers *are*

---

[1] Under federal law, placing a bet and receiving a bet are each a form of gambling
activity that must be lawful in the jurisdiction where it occurs. *See State of
California v. Iipay Nation of Santa Ysabel*, 898 F.3d 960, 965-67 (9th Cir. 2018);
*see also* Pet. 5-6.

authorized. It only describes how the State and Tribe will treat them. For that reason, "this 'deeming' provision simply allocates jurisdiction between Florida and the Tribe, as permitted by 25 U.S.C. § 2710(d)(3)(C)(i)-(ii)." *Id.* 13. It cannot "provide independent legal authority for gaming activity that occurs outside of Indian lands, where that activity would otherwise violate state law." *Id.* 16.

The petition does not point to any Compact text foreclosing the panel's reading. *See* Pet. 7-8. Instead, West Flagler declares that reading a "ruse," alleging that the "deemed" language was intended to convert the off-Indian land wagers into Indian-land gaming authorized by the Compact itself, because the "whole point" of the Compact was to unilaterally authorize off-Indian land wagering, as a way around the Florida constitution's voter-referendum requirement for laws expanding gaming. *Id.* 5, 7-8. Setting aside that both parties to the Compact are now on record disclaiming that the Compact unilaterally authorizes off-Indian land wagers, *see* p. 7, *supra*, West Flagler's arguments are beside the point. At most, West Flagler demonstrates that the Compact text is subject to multiple interpretations, at least one of which may be legally problematic. But even in that circumstance, the lawful reading controls. Op. 11-12.

      d.    Instead, West Flagler collaterally attacks the panel's Compact interpretation by reasserting that IGRA prohibits a compact from including any discussion of gaming that the compact itself does not authorize. Pet. 8-11.

According to West Flagler, including such terms would mean that the Secretary's approval of a compact "is sometimes an approval that authorizes what is in the compact, and sometimes is an approval that does not authorize what is in the compact." *Id.* 11. The panel rejected West Flagler's "novel" view of IGRA, with good reason. Op. 15. Under the statute, Secretarial approval "is a prerequisite for the compact to have legal effect: nothing more, nothing less." *Id.* 16. An in-effect compact is itself a prerequisite for gaming on Indian lands, true. 25 U.S.C. § 2710(d)(1)(C). But IGRA does not limit a compact's contents to that topic. To the contrary, Section 2710(d)(3)(C) lists six specific topics that a compact may address, plus "any other subjects that are directly related to the operation of gaming activities." *Id.* § 2710(d)(3)(C).

West Flagler asserts that the catch-all provision must be construed narrowly, and it cites three out-of-circuit decisions to that effect. Pet. 8-11. What West Flagler fails to do—both before the panel and now in its petition—is explain how, under even the narrowest definition, a customer's placement of an online wager outside Indian lands is anything but directly related to a tribe's receipt of the very same wager on Indian lands. The topics deemed impermissible in West Flagler's cited cases are far afield, as the panel recognized. Op. 13-14; *see Chicken Ranch Rancheria of Me-Wuk Indians v. California*, 42 F.4th 1024, 1037-40 (9th Cir. 2022) (family law, environmental regulation, tort law); *Flandreau Santee Sioux*

*Tribe v. Noem*, 938 F.3d 928, 934-35 (8th Cir. 2019) (taxation of amenities

including hotel, gift shop, RV park, food and beverage services, live shows);

*Navajo Nation v. Dalley*, 896 F.3d 1196, 1212-16 (10th Cir. 2018) (jurisdiction

over slip-and-fall tort).

In practice, tribal-state compacts not infrequently discuss how a state will

regulate gaming outside Indian lands.[2] And the Supreme Court itself noted that

while "literally everything" in IGRA "affords tools . . . to regulate gaming on

Indian lands, and nowhere else," it is still fair game for a compact to memorialize

agreements between a tribe and state regarding how the state will regulate gaming

outside Indian lands. *Bay Mills*, 572 U.S. at 795-97 ("if a State really wants to sue

a tribe for gaming *outside* Indian lands, the State need only bargain for a waiver of

---

[2] *See, e.g.*, Approval, Compact Between State of Connecticut and Mohegan Tribe of Indians, *available at* https://www.bia.gov/sites/default/files/dup/assets/as-ia/oig/pdf/508%20Compliant%202021.09.15%20Mohegan%20Compact%20Amendment_0.pdf (approving compact contemplating that tribe may offer sports wagering on Indian lands *and* participate in statewide sports wagering); Approval, Compact Between State of Arizona and Ak-Chin Indian Community, *available at* https://www.bia.gov/sites/default/files/dup/assets/as-ia/oig/pdf/508%20Compliant%202021.05.24%20Ak-Chin%20Indian%20Community%20Tribal%20State%20Gaming%20Compact.pdf (tribe may participate in off-reservation event wagering authorized by state statute); Approval, Compact Between State of Nevada and Washoe Tribe of Nevada and California, *available at* https://www.bia.gov/sites/default/files/dup/assets/as-ia/oig/pdf/508%20Compliant%202018.01.18%20Washoe%20Tribal%20State%20Compact.pdf (tribe may participate in state-licensed sports betting outside Indian lands).

immunity" as part of the IGRA compact governing related gaming *on* Indian lands (emphasis added)). West Flagler's attempt to radically narrow IGRA thus has no basis in text or precedent.[3]

> e.     Nor is West Flagler prejudiced by the panel's interpretation of the Compact. The opinion makes clear that, as a matter of law, the Compact *does not* render lawful any wagering outside Indian land, and West Flagler remains free to bring a challenge to the Florida statute that does authorize that wagering. Op. 16-17. The petition accepts as much. *See* Pet. 6-7. Instead, West Flagler admits its real concern is that any State-court challenge may fail, because the State constitution's voter-referendum requirement has a carveout for "casino gambling on tribal lands," Fla. Const. art. X, § 30, and the Compact deems the wagers to occur on Indian lands. *See* Pet. 4-7. But whether the deeming artifice—which is contained not only in the Compact but also in the Florida statute authorizing wagers outside Indian land, JA 757—triggers the constitutional carveout is a question for Florida courts to decide, as the panel properly noted. Op. 17. In either event, it is not the Compact (or the Secretary's approval of the Compact) that

---

[3] No resort to legislative history is needed to reach this conclusion. *Contra* Pet. 11-12. The passage in the panel opinion that West Flagler attributes to legislative history simply recounts IGRA's objective of preventing undue impingement on tribal sovereignty, which is evident in the statutory text. *See, e.g.*, 25 U.S.C. § 2710(d)(3)(C), (4), (5). West Flagler's contrary reading would prejudice both tribes *and* states by artificially limiting the topics they may negotiate over during the compacting process.

renders the gaming lawful or unlawful, but how State courts interpret the constitutional requirement. That question is not raised in this challenge to the Secretary.

2.     a.     The equal-protection question raised by the petition is likewise not properly presented. Briefly, West Flagler argues that the Secretary's approval of the Compact violated the Fifth Amendment because the Compact recognizes Florida's decision to prohibit other casinos from offering online sports betting in the State and to increase the criminal penalties for unauthorized sports betting. Pet. 12-16. But for the reasons already discussed, the Secretary's approval of the Compact did not give force or legal validity to Florida's decisions about how to regulate gaming outside Indian lands; any allegation that Florida's regime offends equal protection must be raised in a lawsuit against Florida.[4]

b.     In any event, even assuming West Flagler's equal-protection argument were properly directed at the Secretary, it does not warrant the full Court's attention. Florida granted an exclusive economic benefit to the Tribe, a political entity with which the State necessarily has a different relationship than it does with any private gaming company. Florida did *not*, as West Flagler suggests,

---

[4] The Secretary does not understand IGRA to compel her to determine whether a Compact violates non-IGRA federal law (including Constitutional law) within the 45-day review period. But the panel correctly held that resolving that question is unnecessary here, because West Flagler demonstrates no such violation. Op. 17-18.

pick and choose between individual citizens depending on the political fact of their tribal affiliation (which, the Supreme Court has long held, is itself not a racial categorization, *see Morton v. Mancari*, 417 U.S. 535, 553-54 (1974)). For that reason, *Williams v. Babbitt*, 115 F.3d 657 (9th Cir. 1997), which West Flagler faults the panel for not discussing, is inapposite. The Ninth Circuit in that case rejected a reading of a federal statute that would have barred non-Alaska natives from participating in the reindeer-herding industry. *Id.* at 659-60, 663-66. It said nothing about a state law that grants an exclusive state license to one polity and permits all citizens to freely do business with that entity.

Moreover, even assuming West Flagler could show that individuals were being granted a preference based on tribal status, West Flagler concedes that such distinctions are subject to rational-basis review and satisfy equal protection when they are "tied to Indian lands, to uniquely sovereign interests, or to the special relationship between the federal government and Indian tribes." Pet. 14-15.[5] IGRA expressly advances tribes' uniquely sovereign interests by allowing tribes to raise funds for governing through gaming. *See* 25 U.S.C. §§ 2701-02; JA 673-74. West Flagler's argument therefore fails by its own terms, even before addressing the binding precedent foreclosing it. *See Am. Fed'n of Gov't Emps., AFL-CIO v.*

---

[5] To be clear, none of the Supreme Court cases West Flagler cites supports West Flagler's presumption that *only* preferences connected to these topics are permissible. *See* Pet. 15 n.3.

*United States*, 330 F.3d 513, 521-23 (D.C. Cir. 2003) (upholding government's

grant of contract to tribally owned business because Indian Commerce Clause

"itself establishes the rationality" of decision to give preference to tribes in the area

of trade and commerce).

## CONCLUSION

For these reasons, the petition should be denied.

Respectfully submitted,

/s/ Rachel Heron
TODD KIM
*Assistant Attorney General*
REBECCA M. ROSS
HILLARY HOFFMAN
RACHEL HERON
*Attorneys*

August 31, 2023
DJ # 90-6-16-01173

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation set forth in this Court's order of August 16, 2023, because the brief contains 3,862 words, excluding the parts of the brief exempted under Fed. R. App. P. 32(f) and D.C. Cir. R. 32(e)(1), according to the count of Microsoft Word.

/s/ Rachel Heron

RACHEL HERON

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.

The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ Rachel Heron

RACHEL HERON